Docket Number 24855. Thank you. One second while I get into my secret chamber here. Alright, thank you very much. Good morning Montgomery Blair Sibley. I am the appellant here and I appreciate the courtesy of being called first. I have a several hour drive back to the southern tier of New York and I'm glad to get out of Dodge here on my way home. I want to start not with a lot of verbiage but with two numbers. The number 2415 and the number 16. The number 2415 is important because it was 2415 days ago that I applied for a pistol permit to carry a concealed weapon in the state of New York, primarily because I'm a nuisance wildlife control operator who has to dispatch skunks, possums and the like after I catch them. That was ultimately denied and as a result I am back here for my second time and I have four points that I want to get in if I could before I answer any questions. The first one has to do with what happened at the pistol permit hearing process. Importantly there were procedural defects which included the fact that the sheriff's office issued a report on my suitability to carry a concealed weapon. I to this day have never seen that report. I asked for that report. It was denied. The report was expressly relied upon by the pistol permit officer and he decided upon that report to deny my license. I don't know what it said. I never have had an opportunity to refute whatever allegations are in it. Moreover, I asked for discovery and the ability to call witnesses at that pistol permit hearing. He refused to allow me to do either. And if those procedural barriers weren't enough to send this case back down forthwith, the good moral character was the sole basis upon which he denied my pistol permit back in 2019. Now as you know from Heller, from Bruhn, and from Romini, which has recently come back to this court, has now gone back up to the Supreme Court, this court has recognized repeatedly that good moral character cannot be based upon unchanneled discretion, which is what that is and has been repeatedly recognized as inappropriate. Now the second part of my argument is what happened after that pistol permit hearing. I took this case up to the Fourth Department and they refused to hear what I had to say about those primary two issues, let alone the good moral character issue. They have an obligation to hear. They refused to hear particularly the evidence about the secret report from the Sheriff's Department. And when I went back and said on request for a rehearing, hey, would you address at least this issue? They refused to hear it. They refused to acknowledge it. They refused to address it. My only recourse at that moment was to go up to the New York Court of Appeals, which requires them to have jurisdiction, subject matter jurisdiction, when the case presents a constitutional issue. The constitutional issue was amended to mean a substantial constitutional issue. The Court of Appeals of New York has grafted an adjective onto their subject matter jurisdiction, which allows them essentially to have discretionary jurisdiction and treat one appellant different from another appellant because they can define day by day what substantial means. Mr. Sibley, can I ask the arguments that you're making now, I would put them all in the box of sort of merits arguments. You're telling us why, what the legal flaws were. The district court's decision was really based on an examination that didn't delve into those questions because it concluded that the way that this case was framed up, who you sued and the relief that you sought, wasn't available, primarily because of judicial immunity. I'm wondering whether you've got any arguments to respond to the rationale that the district court gave for its decision. Well, that brings me back to the number 16. In 1871, the U.S. Congress, in response to the atrocious behavior towards primarily Americans of African defense, African descent, in the South, after the Civil War, passed the Ku Klux Klan Act, as it's come to known, the Civil Rights Act. When that act was codified in the U.S. Code, 16 words were left out from what was passed by the U.S. Congress. Those 16 words erased judicial immunity as it had become known and has been known thereafter. So when those 16 words are put back in, there is no judicial immunity. Everybody, everyone is entitled to sue a state official, regardless of their executive, legislative, or judicial branch, if they violate the Civil Rights Act, which is what I'm alleging here, because the Fourth Department refused to hear, and the Court of Appeals expanded their jurisdiction beyond all possible measure. So my point is, and I have the Supreme Court Rule 17 motion as well, asking you to certify that question, because obviously, Pearson V. Ray, at the U.S. Supreme Court, said judicial immunity is basically absolute. Well, they based that on a reading of the Well, isn't that somewhat the answer? That is to say, we are bound by that decision, are we not? I actually recognize that in my reply brief, and that's why I asked you So you're basically preserving this argument for the Supreme Court? No, I'm asking you to preserve the argument for the Supreme Court by sending my request Well, that's not what we usually do. What we usually do is decide the case based on the law as the Supreme Court gives it to us, and perhaps point out that there are arguments here that have been made that are ripe for the Supreme Court, and then the Supreme Court decides what they want to take and what they don't Because they do have, by statute, regardless of whatever you say about the New York Court of Appeals, they do have discretionary jurisdiction, right? You missed an important point there. Practically, what are my chances of having a petition for cert heard at the U.S. Supreme Court? Well, I think that depends a little bit. Excuse me. Doesn't that depend? Excuse me. Excuse me. Isn't that the way the system works? I mean, we are not typically the guardians of the Supreme Court's jurisdiction. They are. No, sir. You are given express authority under Rule 17 of the U.S. Supreme Court, if I got that rule number right, to certify to them the question, because that means you recognize there's a problem and they need to pay attention to it. All right. I get the point. Can I ask a somewhat different question, which is, what is the remedy that you seek? Suppose we agreed with you on all the preliminary questions. Suppose we agreed that the way you were treated violated the Constitution. What happens next? It would seem to me that, you know, you talked about procedural issues. You talked about the application of a standard that is, in fact, no longer the standard under New York law under the new statute of unconstrained discretion. Isn't the remedy that it goes back for a proper hearing? It goes back to a proper hearing before a different judge. And let me sneak in. Well, perhaps that's so, too. But I mean, the remedy, it seems to me, would not be that we decide whether under the Second Amendment and New York law you are entitled to a permit. It would be go back and do this right this time. That's exactly right. And I hope you add the words forthwith. Indeed. Indeed. I mean, one of the things we talked about in Antoniuk when considering the facial constitutionality of the new New York statute was that we would be here if it turned out that the courts and the New York courts or the New York licensing officers were not acting properly. On the other hand, everything that happened to you was under the old statute. So that's a somewhat complicating factor here. But I take it you're agreeing that what we are to do if we agree with your substantive arguments is to send this back and make sure that New York properly adjudicates under the proper standard as enacted in the current statute your application for a gun permit. Everything except the last bit is wrong. I get adjudicated under the old statute because that's what I came up here under. Well, isn't that a problem? I mean, I mean, you know, that statute was unconstitutional. Yeah. But remember in New York pistol, it went up and Justice Clarence was very upset that New York City reamended their statute to kind of moot out what happened here. New York State can't come in. And because they screwed up on my case, amend the law and make me go back under the new law. I am not going to start all over again, spend six and a half years waiting to get up here to get New York to do what they're supposed to do. I see him down to 10 seconds. I'd like to just add really quickly, do not send this back to Judge Geraci. He did not never address my informed paupers petition. He adjourned this case for over a year without me being heard ex parte. And finally, because he ignored this court's mandate. You're not a court of law. You're an aspirational court. You told him in the first instance, consider Broome. He ignored you. So if you send it back down there again, I don't want to see Judge Geraci. Thank you very much. Thank you, Mr. Hitsos. Did I get that right? Hitsos? Hitsos, yes. Good morning, your honors. So I'd like to begin just by pointing out to the court that there is currently pending before it a very similar case called Kellogg versus Nichols. I think we're aware of that. Okay. So that said, the argument for immunity is even stronger here than it was in Kellogg, primarily because Mr. Sibley has disavowed an individual capacity claim against the licensing office here. The only defendants against whom he proceeds in their official capacity are state appellate court judges. And there's no serious debate that they're performing judicial functions, namely deciding his appeal and that they had jurisdiction to do so. In fact, that is Sibley's argument. Let me talk about what there might be serious debate about. Putting aside for the moment your argument that this kind of issue has been waived, why would Judge Watches have judicial immunity when it seems to me he's not performing a judicial function? Well, that's already been set forth by this court and Libertarian Party. I know we've said that, but I'm trying to figure out. I mean, as Mr. Sibley points out, we may be bound by various precedents, but there are things we can do about that. He wants, and I think he's right that we could do this in theory, he wants us to certify a question to the Supreme Court and tell them that they're wrong. We could also seek and bank consideration of this very question. So let me put to you this way. In New York City, am I right that the kind of application that Mr. Sibley made would be decided by the police commissioner? That's correct, Your Honor. And would you agree that if the police commissioner denied him due process or applied an unconstitutional standard, he would have the ability to seek relief under Section 1983? That would be qualified immunity, at least, if it was a suit for damages. But would some kind of injunctive action not lie in that case? Well, now we're talking about official capacity claims, Your Honor, as opposed to judicial immunity. I understand that, and you said, you told us that he's waived that. I'm trying to figure out. I mean, after all, although he's legally trained, Mr. Sibley is a pro se litigant. Why would there not, why isn't Libertarian Party just simply wrong? Libertarian Party channels laws about judicial immunity that have existed or predated Libertarian Party. That is, it is a functional approach. Libertarian Party, when it was discussing the review of pistol licensing applications, says that this is the application of law to the facts of a case following judicial-like procedures. Well, then doesn't that mean that the police commissioner of New York would be functioning as a judge and would have absolute immunity? It may well, Your Honor, yes.  Yes. How can you possibly support that? Do you have a single case in which a non-judicial officer has been recognized as a judicial officer? Yes, Your Honor. Butts v. Economico, which stands for the proposition that ALJs get judicial immunity. Well, that's a very different matter. They are people who adjudicate as a matter of course. I shared some of Judge Lynch's concern here. I mean, you're arguing to us that whoever decides whether or not you get a pistol permit is a judicial officer entitled to absolute immunity. Yes, Your Honor. I'm saying that if that case arises, there would be a strong, there would be a strong argument for it. I want to be clear that we're talking about hypotheticals, right? Some people might think the better argument is that no one in that process is performing a judicial function. They're issuing a license, basically, a permit. That kind of thing goes on all the time with all kinds of permits and licenses. You think they're all judicial functions? Not necessarily, Your Honor. And if you look at – But what's the defining, what's the defining feature that makes it a judicial function here? The procedures available here, there was a hearing. And contrary to what Mr. Sibley says, there was an opportunity to call witnesses. He could have been represented by counsel. So there is an adjudicative proceeding. There is an application of a legal standard to the facts of the case. Who's the adversary? There is no adversary in this, but that is not decisive to the judicial immunity question. In Stumpf v. Sparkman, they applied judicial immunity in the context of a – I believe it was a search warrant application. And those are ex parte. How is this – what you described before about hearings and lawyers, isn't that true of every zoning board appeal that happens in a suburban town or in New York City for that matter? There are proceedings. There can be hearings. And then a group of elected executive branch officials of some sort or possibly appointed officials on a zoning board make a decision about whether you get a variance or whether you are or are not within the code that the village has adopted. We adjudicate those cases for due process problems all the time. I'm not aware of cases where you adjudicate claims for damages in that respect. Claims for damages might be different. And even so, when there are executive officers, cops, they have qualified immunity and there are standards for that. But I'm just having trouble understanding. I mean, if I took on the responsibility of being a trustee of the state university, I think the Judicial Code of Ethics would allow me to do that. Thank God I have never been asked and wouldn't do it. But if I did, if I did, and then we turn someone down for tenure on the basis of their sex or race, or at least so they alleged, would they be allowed to sue the trustees except me because I'm, after all, a judge? No, Your Honor, because in that situation, simply turning somebody down for tenure wouldn't be a judicial function. That's just an administrative decision. So explain to me again why issuing a pistol permit in New York is a judicial function rather than an administrative function. It has to do with the procedures involved. It's not simply an up or down determination. It is, in fact, because of the very thing that Mr. Sibley is arguing is unconstitutional. It is an application of discretion applying a legal standard. So there is this legal standard under 400. Okay, I get your point. And then I guess the next question would be, suppose you're right, and suppose Judge Watches has absolute immunity, and suppose you're even right that the police commissioner has absolute immunity. What is Mr. Sibley's remedy if either of those gentlemen denies the permit on an unconstitutional ground or based on unfair violation of due process procedures? Precisely what Sibley has done already. He took the case to the Fourth Department. The Fourth Department acts as an appellate tribunal. It's reviewing the legal questions before it, and it's deciding whether to affirm that decision, vacate that decision, or modify that decision. And that's not an Article 78 proceeding? That is a plenary straight appeal, the same as it would be if Mr. Sibley filed a lawsuit for trespass against his neighbor, lost in the Supreme Court, and sought to appeal? No, you're wrong. So it's an Article 78 proceeding, but for all functional purposes it serves as an appeal. It is commenced directly in the appellate division. It is review on questions of law. One of the questions there is a misapplication of law, and I would point out. But once again, we frequently hear civil rights suits usually after someone has exhausted his state remedies, and maybe that would also cure certain due process kinds of arguments if there's an after-the-fact judicial review of a sort. But in terms of the substance, is there not usually the opportunity to file a 1983 action if the action of an administrative official is unconstitutional after an Article 78 proceeding is maintained? Your Honor, it would depend on the nature of the injury and the type of relief sought. So in many of those 1983 cases involving state officials where there would be an Article 78 available, those officials are not being targeted solely for a decision they rendered in the course of their adjudication. And I'd like to point out that Libertarian Party and what we're talking about, we've been using immunity and prospective relief sort of interchangeably. Libertarian Party and the judicial immunity component stands for retrospective relief. You cannot sue a judge for damages based on your belief that the judge gets it wrong. And so in that kind of posture, whether the person's title is a judge, as it was here, or whether the person has a different title but is performing an adjudicatory function, the principle still stands that your remedy, if you have any other remedy to review it, correct that error in the adjudication, it would be an affront to just turn around and hail that person into court for damages because you disagree with what they did. Right. But what about the kind, you know, I don't mean to suggest that Mr. Sibley has abandoned any claim for damages in this court, but his primary focus in his argument was on that there should be some form of relief that the district judge, whoever that might be, is instructed to send the case to declare that the New York licensing officials are required to apply certain particular standards to whatever application he makes anew or even to the one that has been made, I suppose. But why would that be barred? So now we're talking about the official capacity claim. And that's what you say, maybe he could do that if he had only asked, but he has abandoned that claim. Is that your point? No, no. If I could clarify what claims we believe are being raised, the retrospective relief for damages claims are being raised solely against state court appellate judges. Watches, Judge Watches, the licensing officer, is being sued in his official capacity, but we would argue that that claim fails for the same reason a claim against any state officer fails, which is that he is looking for retrospective relief. You could find that on page 176 through 177 of the appendix. He is asking this court to issue a directive to Judge Watches to either reopen his application or to directly grant his PISTOL license. That involves reaching back and undoing something that's already being done. As for his request for a declaration that certain aspects of New York's PISTOL licensing law are unconstitutional, as this court had pointed out, the law under which his applications were decided has already been superseded. So all this court would be doing is declaring invalid a law that's no longer on the books. This illustrates exactly what Sibley should have been doing instead of proceeding with this. Instead of suing all these people, he could have just applied for a license under the new law. Yes, Mr. Sibley is arguing that Bruin, Antonia, Brahimi, that these are game changers, and we don't necessarily dispute that they had a major effect on New York's PISTOL licensing laws. If that's the case, reapply for a PISTOL license. You might succeed, and if you don't, at the very least, when you challenge that determination, that determination is going to be decided under current law. Now, there are interesting questions about what Sibley is to do if he believes that the new law is unconstitutional. I should point out that he had three claims for relief in his fifth amended complaint that he has since abandoned. The challenge, the new law, so we're solely proceeding against judges and their application of the old law. I mean, the problem with those counts, I suppose, is that we've already decided that the new law is constitutional on its face. If it took him however many days, he said at the beginning, to get this claim adjudicated, and the New York State courts were the ones who were responsible for that delay, the New York State licensing authorities, that would raise an interesting question of the sort we held open in Antonio, that we would be available to see whether the New York system has cleaned up its act, as it were, or has not. But this case, everything they did, they did before Bruin. Absolutely, Your Honor, and I would agree that there are some potentially interesting questions at the margins here, but we do take issue with any kind of notion that the delay is the fault of New York State courts. This proceeded in the ordinary course and was mocked up, in a sense, by the fact that Sibley had commenced this lawsuit on a parallel track, and that's what resulted in these multiple amended complaints. Mr. Hitzes, I want to ask you something before you finish, because if Mr. Sibley disagrees with it, I want him to have the opportunity to say so in rebuttal. Did you say a few moments ago that his complaint sues only the appellate judges for money damages, or did I misunderstand you? The claims for money damages, the individual capacity claims, are only against the State appellate judges. So you're saying that they get absolute immunity because that was clearly a judicial function, their review, and that as for Mr. Watches or Judge Watches, that there there's no claim for money damages? That's correct, Your Honor. I want Mr. Sibley to tell us if he disagrees with that. He's free to disagree, but I believe that his briefs would undermine any such disagreement. I want to be sure I understand the party's position. But there is an official capacity claim against Judge Watches. We acknowledge that. We simply argue that as to Judge Watches, as to the rest of the defendants. For what kind of relief? He's asking for this court to undo Judge Watches' decision. And allow him to get the permit, okay, but not money damages. Not money damages. Okay. That's correct. Now. I think we're good. Excellent, Your Honors. Thank you. Appreciate it. Thank you, Mr. Sibley. One minute. Yeah, just briefly, understand, even if I were to reapply, that would not address the procedural issues of secret reports because the anti-Bruin law that New York passed doesn't deal with New York's procedure for processing a pistol permit application. That issue is as new today as it was when I filed it before the adjudication came out. And you're suing Judge Watches for not rectifying that. Yes. I asked Federal Judge Geraci to tell Judge Watches in his administrative capacity that he was violating constitutional rights by doing that. By not doing that. All right. Is it correct you're not suing Judge Watches for money damages? Correct. I live in the same county as Judge Watches. I didn't want to go after him personally for money damages. I just wanted my rights upheld. Second, the fact that the appellate judges, that's not that they were acting. The fact is they didn't act. They did not address my issues. And, therefore, judicial leniency shouldn't attach in the first part. If they had said, Mr. Sibley, you're wrong about the secret evidence from the sheriff, I can't sue them at that moment. They've made their judicial decision. They refused to address that and the other issues. And if I can just end very briefly, I don't want to be here. I've got two skunks I've got to pull out of a porch. And I can't euthanize them with a pistol shot to the back of the head, which is quick and clean. I have to put them in a 30-minute CO2 bath and watch them struggle for 30 minutes. The part is I did go to Albany Law School. I do know how to practice law. I can perfect an appeal here. 2,415 days later, most of New Yorkers couldn't afford to have an attorney take this case here. Grammatically sealed as you are on the 17th floor, I think it's important to remember the barriers to receiving relief in this judicial system that we now have. Because no one could afford to do what I do, except I was trained to do it. That's all I have to say, and I thank you again for your time. Thank you both. Appreciate your arguments. We'll take this case under advisement.